IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERTA MORRISON,<br>Plaintiff,<br><br>v.<br><br>JSK TRANSPORT, LTD.,<br>BODKIN LEASING CORPORATION,<br>DALJINDER SINGH SANGHA,<br>NAVPREET SINGH MUTTI,<br>SIMFREIGHT SOLUTIONS,<br>OSPECA LAREDO,<br>RIORDAN LEASING, INC.,<br>EVERETT LOGISTICS, LLC,<br>TIPPITT TRUX'S & REPAIR, LTD.,<br>TA OPERATING, LCC, and<br>KUEHNE + NAGLE, INC.,<br>Defendants. | Case No. 20–CV–01053–JPG |

**MEMORANDUM & ORDER**

This is a personal injury case. Before the Court is Defendant Kuehne + Nagle, Inc.'s ("K&N's") Motion to Dismiss, (ECF No. 42). For the reasons below, the Court **DENIES** K&N's Motion and **REMANDS** to the Fifth Judicial Circuit Court in Cumberland County, Illinois.

**I.    PROCEDURAL & FACTUAL HISTORY**

In August 2020, Morrison sued the defendants in the Fifth Judicial Circuit Court for common-law torts arising from a motor vehicle accident. (Compl. at 1, 5–28). The Complaint includes a negligence claim against K&N, who "brokered the load being hauled by [Defendants JSK Transport, Ltd. and Bodkin Leasing Corporation] at the time of the subject collision":

    9.    [K&N] engaged in one or more of the following acts, or made one or more of the following choices:

        a. Failed to verify that the companies it assigned to haul loads are qualified to do so in a safe manner;

        b. Failed to verify that the drivers assigned to haul loads are qualified to do so in a safe manner;

        c. Failed to verify that the companies it assigned to haul loads adequately train their drivers to do so in a safe manner;

        d. Failed to verify that the drivers assigned to haul loads are adequately trained to do so in a safe manner;

        e. Failed to verify the safety record of the companies assigned to haul loads;

        f. Failed to verify the safety record of the drivers assigned to haul loads; and

        g. Allowed JSK/Bodkin to haul its trailer notwithstanding that it knew or should have known that JSK/Bodkin lacked the necessary skill or expertise to do so.

    10.    Defendant's conduct as set forth above was negligent.

(*Id.* at 21). The Complaint also states that "[t]here is not complete diversity of the parties" given that Morrison and two defendants (Everett Logistics, LLC; Tippitt Trux's & Repair, Ltd.; and TA Operating, LLC) are Arkansas citizens. (*See id.* at 3–4).

    In October, K&N removed the case to this Court, asserting federal-question jurisdiction. (Not. of Removal at 1). In brief, it argues that the negligence claim against it is "completely preempted by the express language of" the Interstate Commerce Commission Termination Act (or "ICCTA"), 49 U.S.C. § 14501(b), and the Federal Aviation Administration Authorization Act (or "FAAAA"), *id.* § 14501(c), thus raising a federal question. (*Id.* at 3–5). It then moved for dismissal. (*See* Mot. to Dismiss at 1–2).

## II.     LAW & ANALYSIS

"A civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (citing 28 U.S.C. § 1441). And a civil action arises under federal law when federal law is present in the original *cause of action. See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153 (1908); § 1331. In other words, "absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Anderson*, 539 U.S. at 6. This so-called *well-pleaded complaint rule* embodies the "paramount policies . . . that the plaintiff is master of the complaint . . . and that the plaintiff may, by eschewing claims based on federal law, choose to have the case heard in state court." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 389–99 (1987). Federal defenses, on the other hand, cannot sustain federal-question jurisdiction because they are often easily conjured and meritless, concocted by savvy attorneys to gain federal jurisdiction. *See Mottley*, 211 U.S. at 153.

With that in mind, the *complete-preemption doctrine* is an exception to the well-pleaded complaint rule: "[W]here Congress has completely preempted a given area of state law, a plaintiff's state law claim will be 'recharacterized' as a federal claim so that removal becomes proper." *Hart v. Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan*, 360 F.3d 674, 678 (7th Cir. 2004). Thus "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983).

> When the federal statute completely preempts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that "arises under" federal law to be removed to federal court. In the two categories of cases where [the Supreme] Court has found complete preemption—certain causes of action under [the Labor Management Relations Act] and [the Employment Retirement Income Security Act]—**the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.**

*Anderson*, 539 U.S. at 8 (emphasis added); *e.g.*, *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968) ("An action arising under § 302 [of the Labor Management Relations Act] is controlled by federal substantive law even though it is brought in state court.").

Relevant here, the Interstate Commerce Commission Termination Act preempts state laws relating to the prices, routes, or services of freight brokers:

> [N]o State or political subdivision thereof and no intrastate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

49 U.S.C. § 14501(b)(1).

Similarly, the Federal Aviation Administration Authorization Act preempts state laws relating to the prices, routes, or services of freight brokers "with respect to the transportation of property":

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

*Id.* § 14501(c)(1). *See generally Dan's City Used Cars, Inc.*, 569 U.S. 251, 261 (2013) ("[T]he addition of the words 'with respect to the transportation of property' . . . massively limits the scope of preemption ordered by the FAAAA.") (cleaned up).

In its Notice of Removal, K&N argues that Morrison's state law negligence claim is preempted by both the ICCTA and the FAAAA because the claim "relates to" its "services." More specifically, the Complaint alleges that K&N, a freight broker, negligently arranged for the transportation of goods—its service. K&N therefore contends that Morrison's negligence claim is completely preempted by the federal statutes.

In *Nationwide Freight Systems, Inc. v. Illinois Commerce Commission*, the Seventh Circuit "articulated two requirements for preemption" under the FAAAA:

> First, a state must have enacted or attempted to enforce a law. Second, that law must relate to carrier rates, routes, or services either by expressly referring to them, or by having a significant economic effect on them.

784 F.3d 367, 373–74 (7th Cir. 2015) [hereinafter *Nationwide Freight*] (cleaned up) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29 (1995); *Travel All Over the World Inc. v. Kingdom of Saudi Arabia*, at 1342 (7th Cir. 1996)).

As for the first requirement, K&N concedes that negligence claims could be considered an "other provision having the force and effect of law" under the statutes. (K&N's Mot. to Dismiss at 5). *Accord Wolens*, 513 U.S. at 233 n.9 (noting that even Justice O'Connor's dissent—which advanced a more expansive "total preemption" not adopted by the majority—"leaves room for personal injury claims, but only by classifying them as matters not 'relating to [air carrier] services'" under the Airline Deregulation Act); *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014) ("[W]e conclude that the phrase 'other provision having the force and effect of law' [in the Airline Deregulation Act] includes common-law claims.").

And as for the second requirement, K&N suggests that permitting negligence suits against brokers "would place a direct, substantial and adverse impact on the manner in which brokers perform" their services and "dramatically and adversely impact the costs of [their] services and rates." (K&N's Mot. to Dismiss at 9–10). Morrison, however, asserts that K&N carries a weighty evidentiary burden under *Nationwide Freight*: Without more, K&N's concerns are too " 'tenuous, remote, or peripheral' " to establish a significant nexus between negligence claims and brokers' rates or services. (Morrison's Resp. to K&N's Mot. to Dismiss at 2–5) (quoting *Nationwide Freight*, 784 F.3d at 373).

This Court is hardly the first to consider whether "personal injury claims alleging negligence by brokers in selecting motor carriers" are preempted by these statutes—indeed, "district courts are sharply divided" on the question. *See Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1295 (W.D. Okl. 2019); *Gillum v. High Standard, LLC*, 2020 WL 444371, at *3–*5 (S.D. Tex. Jan. 27, 2020) (collecting cases). But the Ninth Circuit—the only appellate court to consider it— found that a similar negligence claim "related to" a broker's "services" under the FAAAA *See Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1023–25 (9th Cir. 2020). Even so, the claim was **not** preempted because it fell under the statute's **safety exception**. *See id.* at 1025–29. "This exception provides that the FAAAA 'shall not restrict the safety regulatory of a State with respect to motor vehicles.' " *Id.* at 1025–26 (quoting 49 U.S.C. § 14501(c)(2)(A)). (The ICCTA contains the same exception.) *See* 29 U.S.C. § 14501(a)(2). According to the Ninth Circuit, "the purposes of the FAAAA in general and the safety exception in particular" reveal that " 'the safety regulatory authority of a State' encompasses common-law tort claims":

> [I]n passing the FAAAA, Congress was primarily concerned with the States regulating *economic* aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws. Congress's clear purpose in enacting the safety exception, then, was to ensure that its preemption of States' economic authority over that industry[,] not restrict the states' existing power over safety. That power includes the ability to regulate safety through common-law tort claims.

*Miller*, 976 F.3d at 1026 (emphasis in original) (cleaned up). Put differently, "if the preemption provision targets a government's exercise of regulatory authority and that provision encompasses common-law claims, then surely the safety regulatory authority of a State also includes at least some common-law claims." *Id.* at 1027.

This Court is persuaded by the Ninth Circuit's finding that there is "nothing in the FAAAA's legislative history that suggests Congress intended to eliminate this important component of the States' power over safety." *Id.* at 1026. True enough, personal injury claims against freight brokers could affect brokers' services: Faced with the threat of civil liability, brokers might be pushed to implement greater safety measures that could raise costs. At bottom, however, Morrison is not challenging the economic aspects of trucking, like tariffs or price regulation—her negligence claim centers on the safety of motor vehicles on the road at K&N's behest. While K&N argues that the safety exception is inapplicable because it does not *itself* operate or maintain motor vehicles, that is a mere half-truth: It contracts with third parties to do so. Here again, the Court agrees with the Ninth Circuit that "negligence claims against brokers that arise out of motor vehicle accidents" have "the requisite 'connection with' motor vehicles" to fall under the safety exception. *Miller*, 976 F.3d at 1030.

This view aligns with the Seventh Circuit's limited application of complete preemption, which "requires a clear showing of Congressional intent to eliminate state law entirely." *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 895 (7th Cir. 2013); *In re Repository Techs., Inc.*, 601 F.3d 710, 723 (7th Cir. 2010) ("We have likewise recognized the narrowness of the doctrine, applying complete preemption only where Congress clearly intended completely to replace state law with federal law and create a federal forum.'") (cleaned up). Indeed, *complete preemption* "is a misnomer": It "has nothing to do with preemption and everything to do with federal occupation of a field." *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001). Rather, it is commonly confused with "its more ordinary cousin, 'conflict preemption.'" *Id.* at 403. Simply put, "the fact that a federal statute creates a defense to a state law claim does not necessarily mean that 'Congress has, by statute, taken the subject away from state tribunals and given it to federal courts.'" *Id.* (quoting *Ceres Terminals, Inc. v. Indus. Comm'n of Ill.*, 53 F.3d 183, 186 (7th Cir. 1995). Here, neither the ICCTA nor the FAAAA provides a federal remedy that "includes the same ingredients as the state claim and provides some recovery." *See id.* at 404. *Cf. Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998) (finding a breach-of-contract claim completely preempted by the Federal Communications Act because the statute vests the Federal Communications Commission with exclusive jurisdiction over claims related to tariffs). Rather, they simply present a defense to the merits of Morrison's negligence claim, and so they cannot sustain removal. *See Vorhees*, 272 F.3d at 405.

— 9 —

### III.  CONCLUSION

The Court **DENIES** Defendant Kuehne + Nagle, Inc.'s Motion to Dismiss and **REMANDS** to the Fifth Judicial Circuit Court in Cumberland County, Illinois.

**IT IS SO ORDERED.**

**Dated: Monday, March 8, 2021**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
